**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| United Parcel Service, Inc., | ) | |
| | ) | |
| *Petitioner,* | ) | |
| | ) | No. 22-1029 |
| v. | ) | |
| | ) | |
| Postal Regulatory Commission, | ) | |
| | ) | |
| *Respondent.* | ) | |

## PETITION FOR REVIEW

Pursuant to Rule 15(a)(1) of the Federal Rules of Appellate Procedure, 39 U.S.C. § 3663, and 5 U.S.C. § 706, United Parcel Service, Inc. ("UPS") hereby petitions this Court for review of Postal Regulatory Commission Order No. 6048—Order Rejecting United Parcel Service, Inc.'s Proposed Changes to Postal Service Costing Methodologies (UPS Proposal One), *Periodic Reporting (UPS Proposal One)*, Docket No. RM2020-9 (Nov. 29, 2021), and Order No. 6097—Order Denying United Parcel Service, Inc.'s Motion for Reconsideration of Order No. 6048. A copy of Order No. 6048 is attached to this petition as Exhibit A and a copy of Order No. 6097 is attached as Exhibit B.

UPS participated in the proceedings below and is adversely affected and aggrieved by Order No. 6048 and Order No. 6097. UPS seeks relief on the grounds

that Order No. 6048 and Order No. 6097 are, among other things, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. *See* 5 U.S.C. § 706(2). UPS requests that the Court hold unlawful, vacate, and set aside Order No. 6048 and Order No. 6097, and grant any other necessary and proper relief.

February 25, 2022

Respectfully submitted,

*/s/ Steig D. Olson*
Steig D. Olson
David M. Cooper
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7000
*Counsel for United Parcel Service, Inc.*

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| United Parcel Service, Inc., | ) | |
| | ) | |
| *Petitioner,* | ) | |
| | ) | No. 22-1028 |
| v. | ) | |
| | ) | |
| Postal Regulatory Commission, | ) | |
| | ) | |
| *Respondent.* | ) | |

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the D.C. Circuit Rules and Rule 26.1 of the Federal Rules of Appellate Procedure, petitioner United Parcel Service, Inc. ("UPS") states as follows: UPS, a package-delivery and logistics company, is an Ohio corporation and the real party in interest in this action. UPS is a wholly owned subsidiary of UPS Worldwide Forwarding, Inc., a Delaware corporation. UPS Worldwide Forwarding, Inc., is a wholly owned subsidiary of United Parcel Service of America, Inc., a Delaware corporation. United Parcel Service of America, Inc. is a wholly owned subsidiary of United Parcel Service, Inc. ("UPS Inc."), a publicly traded Delaware corporation. No publicly-held corporation owns 10% or more of UPS Inc.'s stock.

February 25, 2022

Respectfully submitted,

*/s/ Steig D. Olson*
Steig D. Olson
David M. Cooper
QUINN EMANUEL URQUHART & SULLIVAN
LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7000
*Counsel for United Parcel Service, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that the undersigned caused to be served on February 25, 2022, a copy of Petitioner United Parcel Service, Inc.'s Petition for Review via hand delivery to the following:

| David A. Trissell | |
| General Counsel | |
| Postal Regulatory Commission | |
| 901 New York Ave., N.W., Suite 200 | |
| Washington DC 20268-0001 | |

*/s/ Steig D. Olson*
Steig D. Olson
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7000
*Counsel for United Parcel Service, Inc.*

# EXHIBIT A

**Postal Regulatory Commission**
**Submitted 11/29/2021 11:15:41 AM**
**Filing ID: 120278**
**Accepted 11/29/2021**

ORDER NO. 6048

UNITED STATES OF AMERICA
POSTAL REGULATORY COMMISSION
WASHINGTON, DC 20268-0001

Before Commissioners:
Ashley E. Poling, Vice Chairwoman;
Mark Acton;
Ann C. Fisher; and
Robert G. Taub

Periodic Reporting
(UPS Proposal One)

Docket No. RM2020-9

ORDER REJECTING UNITED PARCEL SERVICE, INC.'S
PROPOSED CHANGES TO POSTAL SERVICE COSTING METHODOLOGIES
(UPS PROPOSAL ONE)

(Issued November 29, 2021)

I.     INTRODUCTION

On May 29, 2020, United Parcel Service, Inc. (UPS) filed a petition pursuant to 39 C.F.R. § 3050.11.[1]  UPS requests the Commission to initiate a proceeding to change how the Postal Service determines incremental costs and how it accounts for peak-season costs in its periodic reports.  Petition at 1.  UPS designates its proposed changes as UPS Proposal One.  *See id.*  UPS contends that the Postal Service's periodic reports apply the Postal Service's costing methodologies to determine, among

_____

[1] Petition of United Parcel Service, Inc. for the Initiation of Proceedings to Make Changes to Postal Service Costing Methodologies, May 29, 2020 (Petition).  UPS also filed a library reference designated Library Reference UPS-LR-RM2020-9/1 in support of its Petition.  *See* Notice of Filing of Library Reference UPS-LR-RM2020-9/1, May 29, 2020.  Library Reference UPS-LR-RM2020-9/1 consists of a Preface and a ZIP file of seven directories.  *Id.*

other things, "whether the Postal Service's 'costs, revenues, rates, and quality of service' comply with Title 39, including [section] 3633, which applies to competitive products." *Id.*

Based upon its review of the Petition, information submitted by both UPS and the Postal Service, and comments filed by participants, the Commission rejects Proposal One for the reasons discussed in more detail below. The Commission concludes that Proposal One violates statutory requirements and does not provide any improvement to the current methodology. The Commission nevertheless finds that it is appropriate and timely for the Postal Service to accelerate studies on peak-season costs and notes that it has recently established a proceeding, discussed below, "to consider possible improvements to the quality, accuracy, or completeness of data provided by the Postal Service."[2]

## II. UPS PROPOSAL ONE

UPS alleges that the Postal Service's current costing models do not fully account for the increase in peak-season costs driven by package shipments. Petition at 1. UPS asserts that these shipments "take on sharply different seasonal patterns than letters," which causes a "disconnect between the legacy costing models and the distinctive features of package delivery." *Id.* at 1-2. UPS asserts further that peak-season costs incurred in December and caused by Competitive products are largely overlooked by existing costing methodologies. *Id.* at 2. UPS claims that Postal Service data show that the additional December peak-season costs would not exist if the Postal Service did not deliver packages and that these costs are incremental costs that should be attributed to Competitive products under the principle of incremental-cost attribution. *Id.* at 2-3.

Based upon its analysis, UPS alleges that the current costing models fail to explain and attribute on average approximately $500 million of the "additional peak-

---

[2] *See* Docket No. RM2022-1, Notice and Order of Proposed Rulemaking on Periodic Reporting, October 8, 2021, at 1 (Order No. 6004).

season costs" annually, thereby "effectively ignoring them under 39 U.S.C. § 3633(a)." *Id. a*t 3. UPS acknowledges that the Postal Service has made some limited changes to its cost attribution practices, but claims that "a significant amount of costs caused by competitive products still are not being attributed to such products, both individually and as a group." *Id.* According to UPS, the alleged failure of the costing methodology to capture the full costs of package delivery is further illustrated by the Postal Service's publicly available data, which shows that the dramatic increase in package deliveries during the COVID-19 pandemic has not resulted in greater profits, but rather in greater losses. *Id.* at 4. UPS asserts that additional data and analytical work is required to address the factors driving the explained cost increases during the peak season, and the Commission should request the Postal Service to produce relevant supplemental data. *Id.* at 36-38.

UPS puts forward a proposal in which it requests the Commission to address the alleged failure of existing cost models to properly capture and attribute peak-season costs to Competitive products. UPS requests the Commission to direct the Postal Service to:

(1) Calculate, using the methodology suggested by UPS, and attribute what it characterizes as "unexplained peak-season costs to [C]ompetitive products as a group under the incremental cost test utilized for 39 U.S.C. § 3633(a)(1);"

(2) Properly analyze the seasonality effects and revise the cost models to accurately account for such effects, with respect to 39 U.S.C. § 3633(a)(2);

(3) Produce additional data regarding peak season operations, which would lead to an improved costing methodology; and

(4) Develop a new methodological approach for 39 U.S.C. § 3633(a)(1) and (a)(2), that addresses more generally peak-season costs and the deficiencies in allocating incremental costs.

*See id.* at 39-41.

As it relates to the attribution of so-called "unexplained peak-season costs," UPS also proposes an "interim measure" for the Postal Service to implement prior to the analysis of seasonality effects and revision of the costing models. *Id*. at 40. It suggests

an attribution method for the "overlooked" incremental costs (identified for competitive products as a group) "on a pro-rata basis by weighted volume." *Id.* at 39-40.

## III. PROCEDURAL HISTORY

On July 13, 2020, the Commission issued Order No. 5586 initiating this proceeding, scheduling a video technical conference, establishing procedures for participation in the conference, and appointing a Public Representative.[3] In its order, the Commission also announced that a recording of the conference would be made available on the Commission's website. *Id.* at 6. Fourteen interested persons subsequently filed notices of intent to participate in the conference.[4]

On September 17, 2020, the Commission issued Order No. 5687, which established September 28, 2020 as the deadline for filing documents that UPS and the Postal Service would present at the technical conference.[5] Order No. 5687 also

---

[3] Notice and Order Establishing Docket to Obtain Information Regarding Proposed Changes to Cost Methodologies and Scheduling Technical Conference, July 13, 2020 (Order No. 5586).

[4] Notice of the United States Postal Service Regarding Participation in Video Technical Conference, September 14, 2020; Notice of Intent to Participate in Technical Conference, July 15, 2020 (Public Representative); Notice of Intent to Participate in Video Technical Conference on Behalf of the Greeting Card Association, September 10, 2020; Notice of Intent to Participate of the Association for Postal Commerce, September 11, 2020; Notice of Intent to Participate of Pirate Ship, September 14, 2020; Notice of Intent to Participate of Pitney Bowes Inc., September 14, 2020; Notice of Intent to Participate of Amazon.Com Services, Inc., September 14, 2020; Parcel Shippers Association Notice of Intent to Participate, September 14, 2020; Notice of Intent to Participate of the Lexington Institute, September 14, 2020; GAO Notice of Intent to Participate in the PRC's Technical Conference on September 29, 2020, September 14, 2020; Notice of Intent to Participate in Technical Conference, September 11, 2020 (U.S. Postal Service Office of Inspector General); Notice of Intent to Participate in Technical Conference, September 14, 2020 (Quinn Emanuel Urquhart & Sullivan, LLP); Notice of Intent to Participate in Video Technical Conference on Behalf of FedEx Corporation, September 15, 2020; Notice of Intent to Participate in Video Technical Conference on Behalf of Craig-Hallum Capital Group, September 16, 2020. Two late-filed notices of intent to participate were accepted by the Commission. *See* Order Granting Motions for Late Acceptance of Notices of Intent to Participate, September 24, 2020 (Order No. 5695).

[5] Order Establishing Deadline for Filing Technical Conference Documents and Notice of Technical Conference Agenda, September 17, 2020, at 2-3 (Order No. 5687).

published the conference agenda. *Id.* UPS and the Postal Service filed their technical conference documents on September 28, 2020.[6]

## IV. THE TECHNICAL CONFERENCE

The WebEx technical conference was held on September 29, 2020. *See* Order No. 5586 at 6. The Commission posted a two-part recording of the conference on its website on October 2, 2020.[7] On October 27, 2020, the Commission established a deadline for filing comments.[8]

## V. COMMENTS

The Commission received comments from UPS, the American Consumer Institute Center for Citizen Research (ACI), the United States Postal Service (Postal Service), Amazon.Com Services, Inc. (ASI), the Greeting Card Association (GCA), the Parcel Shippers Association (PSA), Pitney Bowes Inc. (Pitney Bowes), and the Public

---

[6] UPS filed a Notice of Materials to be Used in Technical Conference, September 28, 2020, together with a slide presentation entitled "Seasonal Increases in US Postal Service Costs Driven by Competitive Products, Presentation to Postal Regulatory Commission for Technical Conference, September 29, 2020 (RM2020-9)" (UPS Conference Slides). The Postal Service filed its Response of the United States Postal Service to Order No. 5687 Regarding Technical Conference Material, September 28, 2020, together with a slide presentation entitled "Seasonal Volume Variations and Product Costing, Professor Michael D. Bradley, September 29, 2020" (Postal Service Conference Slides).

[7] *See* Notice of Posting Technical Conference Recording, October 2, 2020; Technical Conference Recording Part 1, ZIP file "RM2020-9_PRC Technical Conf_Part 1 UPS.zip" (UPS Conference Presentation); Technical Conference Recording Part 2, ZIP file "RM2020-9_PRC Technical Conf_Part 2 USPS.zip" (Postal Service Presentation).

[8] Notice and Order Establishing Comment Deadline, October 27, 2020 (Order No. 5738).

Representative (PR).[9]  UPS filed proposed reply comments together with a motion seeking leave to file those comments.[10]  The Postal Service opposed the UPS Motion.[11] The Commission granted the UPS Motion.[12]

*UPS Comments.*  UPS alleges that the Postal Service costing models currently in effect do not fully capture the incremental costs caused by the large seasonal spike in package deliveries, which occurs every December, because these models were not built to capture and properly allocate costs.  UPS Comments at 1-2.  It argues that the Postal Service's "study-by-study approach" to cost attribution methodology is slow and relies on an "unsound and unreliable" approach "to calculating the incremental cost of package deliveries."  *Id.* at 2.  UPS concludes that even in the long run, the Postal Service will not be able to solve the problem related to identification and attribution of the incremental cost of package peak season.  *Id.* at 2, 4.

UPS alleges that further studies will not fully remedy the problem of package peak-seasonal costs because of flaws in its incremental cost methodology.  *Id.* at 4-11.

---

[9] United Parcel Service Inc.'s Comments, December 15, 2020 (UPS Comments); Comments of American Consumer Institute Center for Citizen Research Regarding Docket No. RM2020-9, December 15, 2020 (ACI Comments); Initial Comments of the United States Postal Service on UPS Proposal One, December 15, 2020 (Postal Service Comments).  The Postal Service's comments were accompanied by a report prepared by Dr. Michael D. Bradley, *Report on Certain Aspects of UPS Proposal One*, December 15, 2020 (Bradley Report).  In addition, the Postal Service submitted a designated Library Reference USPS-RM2020-9-1 – Public Material Supporting Comments on UPS Proposal One, December 15, 2020. *See* Notice of the United States Postal Service of Filing of USPS-RM2020-9-1, December 15, 2020. Library Reference USPS-RM2020-9-1 consists of a Preface and an accompanying ZIP file.  *See* USPS-RM2020-9-1 Preface and USPS-RM2020-9-1 Files.zip; Comments of Amazon.Com Service, Inc., December 15, 2020 (ASI Comments); Initial Comments of the Greeting Card Association, December 15, 2020 (GCA Comments); Comments of the Parcel Shippers Association, December 15, 2020 (PSA Comments); Comments of Pitney Bowes Inc., December 15, 2020 (Pitney Bowes Comments); Public Representative Comments on UPS Proposal One, December 15, 2020 (PR Comments).

[10] United Parcel Service, Inc.'s Proposed Reply Comments, January 8, 2021 (UPS Reply Comments).  United Parcel Service, Inc.'s Motion for Leave to File Reply Comments, January 8, 2021 (UPS Motion).

[11] Response of the United States Postal Service in Opposition to UPS Motion Requesting Leave to File Reply Comments, January 12, 2021.

[12] Order Granting Motion for Leave to File Reply Comments, January 19, 2021.

Those flaws allegedly include an assumption that the Postal Service's operations are fixed and the reliance on a constant elasticity assumption. *Id.* at 2, 5-10.

To address the deficiencies of current costing models, UPS advocates for implementing a short-term solution while pursuing a longer-term solution at the same time. *Id.* at 4. The proposed short-term solution involves attributing "unexplained peak-season costs" to Competitive products as a group under the incremental cost utilized for 39 U.S.C. § 3633(a)(1), and to individual Competitive products on a volume-weighted pro-rata basis under 39 U.S.C. § 3633(a)(2). *Id.* The proposed long-term solution would be for the Commission to "reform the Postal Service's methodology for estimating incremental cost by modeling a hypothetical stand-alone market-dominant Postal Service from the ground up." *Id.* at 4-5. UPS takes issue with the Postal Service's critique of its analysis and attribution proposals. *Id.* at 11-15. Thus, referring to Professor Bradley's opinion, UPS maintains that "mechanical application of annual volume variabilities to monthly cost totals will not yield accurate costing results."[13]

*ACI Comments.* ACI asserts that the Postal Service's status quo costing management procedures are insufficient and require modification to reflect the realities of today's logistics and delivery markets. ACI Comments at 1. ACI argues that the Postal Service's overhead costs should be rebalanced between Market Dominant and Competitive products. *Id.* at 2. It asserts that such a rebalancing would better ensure the Postal Service's financial sustainability and would focus the Postal Service on better cost management. *Id.*

*Postal Service Comments.* The Postal Service asserts that it is well aware of the seasonal volume peak and plans its resource use for this peak period annually, months in advance of the peak. Postal Service Comments at 1; Bradley Report at 2. The Postal Service confirms that it has analyzed the cost implications of the seasonal volume peaks and refined its costing models to accurately account for them. Postal

---

[13] *Id.* at 12. UPS cites the presentation by Professor Bradley at the technical conference that "[t]he variabilities and distribution keys may be different for seasonal costs…." *Id.* n.29.

Service Comments at 2. The Postal Service also states that it will continue doing so to ensure that seasonal costs are incorporated into product's incremental costs based on the costing method consistent with the established costing theory and the actual operational practice of the Postal Service. *Id.* at 1; Bradley Report at 1-2. The Postal Service acknowledges that package volumes are an important part of the seasonal peak, and it will "ensure that package volume bear the seasonal costs they cause." Postal Service Comments at 2.

In the Postal Service's view, UPS has presented a distorted description of the seasonal peak and its implications, has provided misstatements about seasonal costs, and has proposed a flawed approach to measuring them. *Id.* at 2-13. The Postal Service further alleges that UPS's analysis of "unexplained" seasonal costs is fatally flawed because it is ad hoc with no theoretical or operational basis. *Id.* at 13-21. Moreover, the UPS analysis ignores or downplays longstanding efforts by the Postal Service and the Commission to address seasonal costs appropriately. *Id.* at 2.

The Postal Service alleges that UPS's failure to apply the established costing methodology results in the dramatic overstatement of "unexplained" costs. *Id.* at 14-16. Contrary to UPS's assertions, the Postal Service states that additional costs associated with seasonal peaks are included in the base for calculating attributable costs. Bradley Report at 8. In addition, the costs calculated by UPS and characterized as unexplained or unaccounted are actually an estimate of institutional costs, which are a well-established costing concept. *Id.* at 15-16.

The Postal Service alleges that UPS misunderstands how the existing costing methodology works and how it handles seasonal costs. Postal Service Comments at 21-38. The Postal Service states that the established methodology accounts for the fact that accrued costs increase in heavy volume months, but the UPS methodology for calculating "unexplained" costs does not. Bradley Report at 13-14.

Because of these shortcomings, the Postal Service argues that the method of calculating seasonal incremental costs proposed by UPS is "erroneous and inaccurate" and its proposal to incorporate all seasonal costs into incremental costs of Competitive

products disregards the required "causality or the relationship between volumes and cost." Postal Service Comments at 38. The Postal Service maintains that the UPS proposal would produce an arbitrary allocation of irrelevant volume-variable and non-variable costs to Competitive products and would abandon well-established costing principles. *Id.* at 40-41.

*ASI Comments.* ASI argues that approval of UPS's proposal would suppress price competition by forcing the Postal Service to raise its prices for Competitive products to non-competitive levels thereby harming mailers of both Competitive and Market Dominant products, as well as the Postal Service. ASI Comments at 2.

ASI alleges that UPS misapprehends the Postal Service's costing models, misstates their results, incorrectly asserts that the current cost models improperly fail to attribute $500 million of peak-season costs to Competitive products, and ignores substantial peak season increases in First-Class Mail and international mail volumes. *Id.*

ASI asserts that the acceptance of the proposal would violate the statutory requirement that costs can only be attributed to products "'through reliably identified causal relationships.'" *Id.* at 2-3. It characterizes the UPS proposal as the latest in a series of unsound cost attribution proposals and states that the Commission has previously rejected many of the arguments presented by UPS in this proceeding. *Id.* at 5-6.

ASI argues that the UPS proposal is based entirely on the faulty premise that the existing costing methodology fails to account for the higher costs of season peaks and should, for that reason alone, be rejected. *Id.* at 6. The proposal also allegedly understates peak-season volume-variable costs and overstates institutional costs that UPS seeks to assign to Competitive products. *Id.*

ASI argues that the proposal ignores other seasonal peaks that occur prior to December, such as peaks for USPS Marketing Mail and political mail. *Id.* Finally, it asserts that the volume peak in First-Class Mail is many times larger than the increase

in all Competitive products combined and that the percentage change in international mail exceeds the percentage change in Competitive products. *Id.* at 6-7.

*GCA Comments.* GCA opposes the Petition, in part, because of UPS's alleged failure to demonstrate a reliably established causal relationship between Competitive product volumes and Postal Service costs during the seasonal peak. *See* GCA Comments at 2-4, 7-9. GCA also challenges the method proposed by UPS for attributing costs to individual Competitive products on an interim basis. *Id.* at 4-5. It asserts that UPS uses a "contrived grouping of market-dominant products to support its hypothesis that December competitive volume causes the December cost peak." *Id.* at 6. GCA responds to UPS's complaint that Competitive products are required by the Commission to cover only a "small portion" of institutional costs by pointing out that since FY 2015, the actual contribution by Competitive products "has been at least twice, and on occasion more than four times, the designated appropriate share." *Id.* at 10. Finally, GCA asserts that UPS's call for the Postal Service to produce additional data, while perhaps useful at some point, is not appropriate "in pursuit of an attribution theory which does not respect statutory requirements." *Id.* at 11.

*Pitney Bowes Comments.* Pitney Bowes urges the Commission to reject the Petition. It asserts that the Petition is based on the false premise that the existing models do not capture seasonal variations in product unit costs. Pitney Bowes Comments at 1-4. Pitney Bowes also argues that UPS ignores substantial peak increases in First-Class Mail and international mail volumes and mistakenly assumes that Competitive products are the only products with higher volumes and costs during peak season. *Id.* at 4-5. It asserts further that UPS proposed an ad hoc method for assigning additional costs to Competitive products as a group, and it would violate the statutory requirement that costs be attributed to products that cause those costs. *Id.* at 5-6. Finally, Pitney Bowes recommends that the Commission encourage the Postal Service to continue its studies of seasonal costs and report the results under established Commission procedures. *Id.* at 6.

*PSA Comments.*  PSA opposes UPS's proposal for three reasons.  First, PSA alleges that UPS's claim that approximately $500 million in institutional costs should be shifted to Competitive products annually is based upon flawed calculations that misrepresent how the Postal Service's Cost and Revenue Analysis operates.  PSA Comments at 1-2.  Second, PSA argues that the increase in December costs is not caused solely by Competitive products.  *Id.* at 2-3.  Third, it asserts that even if $500 million of institutional costs were shifted to Competitive products, such shift "would not materially reduce the substantial contribution that competitive products make to cover institutional costs."  *Id.* at 3.  Rather than adopt UPS's Petition, PSA recommends that the Postal Service continue its practice of researching opportunities to improve costing methods.  *Id.*

*PR Comments.*  The Public Representative opposes the Petition on several grounds.  First, he rejects UPS's assertion that Competitive products are the sole, or nearly the sole, factor causing the extra costs associated with peak periods.  PR Comments at ii, 11-12.  Second, he explains why UPS's calculation of unexplained costs that it seeks to attribute to Competitive products is overstated.  *Id.* at 12-13.  Third, he urges the Commission to reject UPS's attempt to attribute costs associated with a December peak solely to Competitive products because it is based upon UPS's unsupported claim that all peak and/or unexplained costs are caused solely by Competitive products.  *Id.* at 14.

VI.    REPLY COMMENTS

In its reply comments, UPS asserts that the increased volumes of different groups of Market Dominant products in December are irrelevant to the calculation of the incremental costs of Competitive products because all cost increases experienced by the Postal Service each December are incremental costs of the Competitive products as a group.  *See* UPS Reply Comments at 1-4.

UPS also challenges the Postal Service's defense of the current methodology for calculating incremental costs of Competitive products by asserting that this

methodology employs the assumptions adopted when Competitive products constituted only a small percentage of total volume and the Postal Service argues that such share "is still quite small." *Id.* at 4-6 (citing Postal Service Comments at 29). UPS argues that the Postal Service ignores the effect of package deliveries on the structure of the Postal Service's operations and that the Postal Service's reliance upon package delivery volumes is a misleading metric. *See* UPS Reply Comments at 6. UPS also asserts that the Postal Service cannot justify its reliance on a constant elasticity assumption for estimating incremental costs of Competitive products. *See id.* at 6-7.

Finally, UPS defends the reliability of its approach for computing the unexplained peak-season costs. *See id.* at 7-10.

## VII. COMMISSION ANALYSIS

### A. Overview

Proceedings to improve the "quality, accuracy, or completeness of Postal Service data required by the Commission" may be initiated by the Commission if "the attribution of costs or revenues to products has become significantly inaccurate or can be significantly improved," or if "such revisions are, in the judgment of the Commission, otherwise necessitated by the public interest."[14] The Commission finds that the applicable statutory requirements have not been satisfied.

UPS has failed to demonstrate that either the attribution of peak-season costs has become significantly inaccurate or the calculation of Competitive products' incremental cost can be significantly improved by applying the methodology UPS advocates. The Commission agrees with commenters that the UPS proposal violates

---

[14] 39 U.S.C. § 3652(e)(2)(A), (C). Additional grounds for data improvement occur when "the quality of service data has become significantly inaccurate or can be significantly improved," which is inapplicable here. 39 U.S.C. § 3652(e)(2)(B).

Title 39 statutory requirements.[15]  The cost allocation methodology put forward in the Petition also disregards the requirements in 39 U.S.C. §§ 3631(b) and 3622(c) that costs can only be attributed to products or groups of products "through reliably identified casual relationships."[16]  Nor does the Petition improve "the quality, accuracy, or completeness of the [Postal Service's] data or analysis of the data" as mandated by 39 C.F.R. § 3050.11(a).[17]  Finally, there is no indication that the change is necessitated by the public interest.

Nevertheless, the Petition highlights some important issues related to the future analysis of peak-season costs and the Commission encourages the Postal Service to perform relevant studies and update the existing costing models as necessary and when feasible.[18]

B.    UPS Presents a Flawed Methodology for Calculating the Peak-Season Costs

The Commission agrees with the Postal Service that the multi-step approach UPS proposes for measuring what it characterizes as "unexplained" peak-season costs contains numerous errors and that its application does not produce any reliable estimates of peak-season costs.[19]  While UPS claims that it "has modeled the effects of volume changes on peak-season costs," it ignores established Postal Service costing principles.  Petition at 20.  Moreover, as the Bradley Report illustrates, UPS's estimates

---

[15] ASI Comments at 2-3; GCA Comments at 1-6, 11; PSA Comments at 1-3; Pitney Bowes Comments at 1, 5-6.

[16] ASI Comments at 2-4; GCA Comments at 1-3; PSA Comments at 2-3; Pitney Bowes Comments at 5-6; Postal Service Comments 38.

[17] ASI Comments at 4; GCA Comments at 7; Pitney Bowes Comments at 5-6; Postal Service Comments at 40.

[18] PR Comments at 14-16; PSA Comments at 3; Pitney Bowes Comments at 1, 6; ASI Comments at 3.

[19] Postal Service Comments at 13; Bradley Report at 11-18; *see* PSA Comments at 1-2.

understate volume-variable costs for some cost segments and for some months, which generally lead to incorrect and misleading results.[20]

Relying on "publicly available information drawn from the Postal Service's costing models and monthly reports," UPS calculates average volume-variable costs per piece (*i.e.,* unit volume-variable costs) for each mail class and four aggregated cost categories: clerks, delivery, transportation, and other.[21] By multiplying these average annual unit volume-variable costs by the change (from November to December) in the "peak-season" monthly volume for each mail class, UPS attempts to estimate the "expected change in volume variable cost [in a peak month] for each cost category and mail class." Petition at 21. After taking the sum of such estimated costs over product groupings (Market Dominant and Competitive product categories) within each cost category, UPS defines "unexplained" cost change as the difference between its estimated "expected" cost change and the actual cost change for the peak month. *Id.*

The Commission agrees with the Postal Service and other commenters that there are a number of methodological and computational problems with the UPS analysis.[22]

First, the purpose of the UPS method is to estimate (predict) volume-variable costs for the peak month, but such estimation is done incorrectly. As pointed out by the Postal Service, "UPS calculation reveals that it predicts monthly volume variable cost by

---

[20] Bradley Report at 13-15. *See* Library Reference USPS-RM2020-9/1, folder "Directory – Calculating Monthly Costs."

[21] *See* Petition at 20-21. *See also* Petition at 6-7; Bradley Report at 11; Rule 39 C.F.R. Section 3050.60(f) Report for FY 2019 (Summary Descriptions) July 1, 2020 (FY 2019 Summary Descriptions), available at *https://www.prc.gov/dockets/daily?filterdate%5Bvalue%5D%5Bdate%5D=7-1-2020.* The publicly available data relied upon by UPS includes, but is not limited to, other reports for the period from January 2019 through December 2019, including the National Trial Balance and Statement of Revenue and Expenses monthly reports and USPS Preliminary Financial Information (Unaudited) monthly reports. *See* Petition at 7 n.9, 10 n.14. These reports are available on the Commission website under "Reports/Data Reports," "USPS Reports," headings, available at *https://www.prc.gov/dockets/usps_reports.*

[22] Postal Service Comments at 13-17; Bradley Report at 12-18; PR Comments at 12-13; PSA Comments at 2; Pitney Bowes Comments at 2-3; ASI Comments at 2.

multiplying a *fixed annual unit cost* by each month's associated volumes."  Postal Service Comments at 15 (referring to Bradley Report at 11-13) (emphasis added).  UPS ignores the fact that under the established methodology, volume-variable costs for the month are to be calculated by multiplying the accrued monthly costs for the cost segment by the relevant variability.  Bradley Report at 13.  This method of calculation allows accounting for monthly differences in costs because accrued costs in heavy volume months are higher than in most other months.  By contrast, UPS eliminates these differences by using only average annual unit costs, and, as a result, ignores the fact that the Postal Service's existing costs models already capture seasonal variation.[23]

Second, to be consistent with its methodological approach, UPS should assess the cost changes from November to December for all aggregated cost segment categories.  However, it does not do so.  Thus, the UPS grouping of cost segments includes the cost segment category labeled as "other," and for this cost segment category UPS predicts an approximately $128 million cost decrease for December.  Petition at 23, Table 2.  While UPS emphasizes December cost increases for three aggregated cost segment categories (clerks, delivery, and transportation), it "is silent on what negative 'unexplained' costs mean [for the aggregated cost segment category labeled as "other"], and how these costs could fall during the seasonal volume peak."  Bradley Report at 15; Petition at 23, Table 2.

Third, the UPS approach appears to be inconsistent in another respect.  While UPS focuses on December volume increases, it does not address the fact that volumes also change in other months.  As the Bradley Report shows, if the UPS cost calculation methodology had been applied to the month of January, it would have produced a cost decline for Competitive products, which offset the December cost increase.  Bradley Report at 16-17; Postal Service Comments at 19-20.  Similarly, if the UPS methodology had been applied to April 2019, the "unexplained" cost changes would have appeared to

---

[23] *Id*. at 12-13; PR Comments at 13; PSA Comments at 2; Pitney Bowes Comments at 2-3; ASI Comments at 2.

be negative despite the increase in competitive volume.  Bradley Report at 17-18; Postal Service Comments at 20-21.  As the Postal Service correctly points out, UPS presents an "incomplete view of the seasonal volume peak."  Postal Service Comments at 8.

In addition, as discussed in Section VII.C., *infra*, the costs that UPS characterizes as "overlooked" are well studied and, contrary to UPS's claims, are not "unexplained," because they fit into the concept of institutional costs.

C.      The Postal Service's Peak-Season Costs Are Not "Overlooked" or "Unexplained" and Are Not Incremental Costs of Competitive Products

In its Petition, UPS focuses on peak-season costs that, it argues, are "largely overlooked by the existing costing methodology."  Petition at 2, 40; UPS Reply Comments at 3 n.8, 10.  UPS consistently maintains that the Postal Service's costing models do not fully explain the cost increases that occur each year from approximately Thanksgiving until the end of the calendar year.  Petition at 26.  It therefore characterizes these costs as "unexplained December cost" increases.[24]

The Commission has previously discussed and rejected the UPS arguments that peak-season costs are not reflected in the Postal Service's costing models.  In the FY 2018 ACD,[25] the Commission stated that:

> [The] conclusion by UPS that seasonal trends are not reflected is incorrect.  This assertion overlooks the fact that the Commission's costing methodology is designed to estimate costs on an annual basis, so any seasonal differences are captured in the annual totals.  Distribution keys for costs are created on a quarterly basis—to the extent that parcel volume is greater in one quarter than in others, the current methodology incorporates and reflects those data.

---

[24] *Id.*, 35-40; UPS Comments at 10; UPS Reply Comments at 9.

[25] Docket No. ACR 2018, *Annual Compliance Determination*, April 12, 2019, at 123 (footnote omitted) (FY 2018 ACD).

The Postal Service is also well aware that the peak-season volume can cause cost increases:

> The Postal Service acknowledges that the existence of a seasonal peak in volume can cause seasonal costs and agrees with UPS that package volumes are an important part of that peak. The Postal Service has performed, and will continue to perform, appropriate costing exercises to ensure that package volumes bear the seasonal peak costs that they cause. But those costing exercises should be grounded in both solid economic theory and actual operational practice.

Postal Service Comments at 2.

As pointed out by PSA, "if the Postal Service handles a particular product in a more costly manner during a particular month, [the Postal Service's] sampling systems will capture" the associated costs and assign them to the product. PSA Comments at 2.

In an effort to justify its assertion that peak-season cost increases should be re-classified as incremental costs attributable to Competitive products, UPS claims that "[s]uch costs would not exist if the Postal Service did not deliver packages."[26] For the reasons discussed below, the Commission rejects this claim.

First, the Commission agrees with the Public Representative that UPS failed to provide any convincing evidence that December peak-season costs "are caused, either solely or primarily, by competitive products." PR Comments at 12. The UPS assertions rely on graphs illustrating the spikes of competitive mail volumes during the December peak season. *Id.* (citing Petition at 16, 18).

These seasonal volume spikes are well known. As the Postal Service correctly notes, their effect on costs are assessed in connection with the share of competitive mail volumes in the overall Postal Service volume. Postal Service Comments at 7-9; PR Comments at 12. As illustrated by the Postal Service, peak-season costs are associated not only with Competitive products, but also with some Market Dominant products that have substantially higher absolute volumes than Competitive products, so

---

[26] Petition at 3 (emphasis omitted); UPS Motion at 1-2; UPS Reply Comments at 1-4.

that the increases in the volumes produce much higher increases in costs.[27]  First-Class Mail also has a December volume peak and its share of the Postal Service's volume is much larger than the Competitive products' share.[28]

UPS further argues that the increase in the individual Market Dominant product volumes is "irrelevant to the economic calculation of incremental costs" pointing out that the overall Postal Service volume would decrease in December without Competitive products.  UPS Reply Comments at 1-3.  UPS supports its arguments with the graphs showing indexed average daily volumes instead of the actual volumes.  Petition at 16; UPS Reply Comments at 3.  These indexed volumes are calculated as monthly volumes "divided by [the number of] delivery days in the month, [and] then indexed to 100 in April 2019."  Petition at 16 n.22.

Both the Public Representative and Pitney Bowes refer to the Bradley Report presented at the technical conference, which illustrate that "[the] indexed measures of growth accentuate the growth rates of products with small volumes" and that "a comparison of percentage changes can provide a misleading sense of relative importance of seasonal volume peaks."[29]  This is "because small volumes can have large percentage changes."  Postal Service Comments at 11.

UPS defends the indexed numbers stating that they are useful because the workload caused by delivering packages is much higher than the workload caused by delivering letters (*e.g.,* "packages are much bigger, bulkier and heavier than an equivalent number of letters.")  UPS Comments at 13.  However, the Postal Service's incremental cost models already take into account differences in a workload associated with delivering mail products because they employ both the cost driver and the cost elasticity (variability).  FY 2019 Summary Descriptions file "APPI-19.docx" at I–4–I–5.

---

[27] PR Comments at 12; Pitney Bowes Comments at 4-5; Postal Service Comments at 11.

[28] PR Comments at 12; Pitney Bowes Comments at 4-5; Postal Service Conference Slides at 5.

[29] PR Comments at 12; Pitney Bowes Comments at 4-5; *see* Postal Service Conference Slides at 7-9.

For example, the cost driver for purchased highway transportation in a relevant cost pool is the cubic-foot-miles driven, so bulkier and heavier Competitive products have more size and weight-driven costs attributed to them on a per-piece basis than smaller, lighter products.[30]

Second, as emphasized by the Postal Service and other commenters, the peak-season costs discussed by UPS are not unexplained, but form "an integral part of the established [costing] methodology" because these are "institutional costs that have been studied" and understood.[31] Institutional costs represent a "well-established costing concept." Bradley Report at 15. They are "residual costs that cannot be specifically attributed to products through reliably identified causal relationships." Order No. 4963 at 2. For each cost segment, the residual costs are costs "that remain after all of the attributable costs are removed" from the accrued costs. FY 2019 Summary Descriptions, file "PREF-19.docx" at ii. The attributable costs (or incremental costs because these "terms are now synonymous in the regulatory arena") are computed using a multi-step approach and include not only volume-variable costs, but also group and product specific costs, as well as certain inframarginal costs. FY 2019 Summary Descriptions, file "PREF-19.docx" at i-ii. In Docket No. RM2016-2, the Commission expanded its definition of attributable costs (which had previously consisted only of volume-variable costs and product specific costs) to extend to all incremental costs.[32]

---

[30] *Id.* at I-2. *See* Docket No. RM2017-1, Order Adopting Final Rules Relating to the Institutional Cost Contribution Requirement for Competitive Products, January 3, 2019, at 152 (Order No. 4963); *see also* Docket Nos. RM2017-1 and RM2022-2, Supplemental Notice of Proposed Rulemaking and Order Initiating the Third Review of the Institutional Cost Contribution Requirement for Competitive Products, November 18, 2021, at 18 (Order No. 6043). The Postal Service's transportation cost system (TRACS) records weight by mail category, which is used to obtain cubic-feet for letters, flats, and some parcels. FY 2020 ACR, Library Reference USPS-FY20-36, December 29, 2020, ZIP file "TRACS USPS-FY20-36," file "USPS_FY20_36_TRACS.pdf," at 4.

[31] Postal Service Comments at 13-14; GCA Comments at 3-4; PR Comments at 13.

[32] Order No. 4963 at 67. *See* Docket No. RM2016-2, Order Concerning United Parcel Service, Inc.'s Proposed Changes to Postal Service Coting Methodologies (UPS Proposals One, Two, and Three), September 9, 2016 (Updated October 19, 2016), at 3, 123-124 (Order No. 3506).

Third, because the costs UPS characterizes as unexplained are actually institutional costs, they "include the costs associated with constructing and maintaining the Postal Service's various networks [and] also include activities associated with the provision of all, or broad groupings of, products that are not caused by individual products." Bradley Report at 15-16. That is why, unlike incremental costs, institutional costs would not disappear if any groups of individual products were discontinued. GCA Comments at 4. It is normal that institutional costs vary from month-to-month because they include both fixed and variable costs. Postal Service Comments at 18; Order No. 3506 at 10 n.15, 67. The Commission agrees with commenters that it has previously rejected the UPS claims that the Postal Service institutional costs include a portion of costs that should have been attributed to products and, specifically, to Competitive products on any basis other than reliably identified casual relationships.[33]

UPS challenges the Postal Service's classification of the "annual peak-season cost spike" as institutional costs, claiming that these costs are "'uniquely and disproportionally associated with competitive products'" and should be considered under the incremental cost test of section 3633(a)(1) and attributed to products under section 3633(a)(2). Petition at 20, 22. The Commission "has repeatedly found" that institutional costs do not include any costs that would be uniquely or disproportionally associated with Competitive products because all such costs "are not already attributed to those

---

[33] Postal Service Comments at 2-3; Order No. 3506 at 102-104; Pitney Bowes Comments at 5; ASI Comments at 3-4.

products under the Commission's current cost attribution methodology."[34]  In the current docket, the Commission continues to follow established costing methodology principles, and concludes that UPS has not demonstrated that peak-season costs are uniquely or disproportionately associated with Competitive products.  Moreover, the claim of a unique or disproportionate association is not relevant to the incremental cost test of section 3633(a)(1) or to cost attribution under section 3633(a)(2).

> D.     The Proposed Interim Measure for Cost Attribution Violates Statutory Requirements

UPS suggests that until the Postal Service revises its costing models, it should apply an interim measure: attribute the peak-season costs, which it estimated using the methodology discussed in Section VI.C., *supra*, to individual Competitive products on a pro-rata basis by weighted volume.  Petition at 40.  UPS claims that this "[p]ro-rata attribution" would provide a "significant step towards compliance with [the Commission's] Order No.  3506."  *Id.*

Commenters heavily criticize UPS's proposed interim measure.[35]  The Commission agrees with these criticisms and does not approve this interim measure (which the Postal Service characterizes as a "short-cut approach") for two primary reasons.  Postal Service Comments at 39.

---

[34] Order No. 4963 at 28 (citing Docket No. RM2017-1, Notice of Proposed Rulemaking to Evaluate the Institutional Cost Contribution Requirement for Competitive Products, February 8, 2018, at 43-44 (Order No. 4402); Docket No. RM2017-1, Revised Notice of Proposed Rulemaking, August 7, 2018, at 52-53 (Order No. 4742)).  Order No. 4963 was remanded to the Commission by the court in *United Parcel Serv., Inc. v. Postal Regulatory Comm'n*, 955 F.3d 1038 (D.C. Cir. 2020).  The issues presented on remand will be addressed in further proceedings in Docket No. RM2017-1 in which interested participants, including UPS, will be afforded an opportunity to comment further.  *See* Order No. 6043 at 130.  In the meantime, the Commission does not concede that the costs upon which UPS focuses in the instant proceeding are uniquely or disproportionately associated with any Competitive products.  *See generally id.*  Nor does the Commission concede that the degree to which any such relationship may exist would be meaningful enough to affect what the Commission's review of what it would determine to be an appropriate share of institutional costs of the Postal Service.

[35] GCA Comments at 5; Pitney Bowes Comments at 5; Postal Service Comments at 40; PR Comments at 14.

First, as discussed in Sections VII.B. and VII.C., *supra*, the short-cut approach relies on a methodology that contains numerous errors and does not produce a reliable estimation of either volume-variable costs or incremental costs.  *See* Postal Service Comments at 39-40; PR Comments at 14.

Second, the Postal Service states "there is no causal basis for choosing the method for the pro rata calculation."  Postal Service Comments at 40.  Commenters agree with the Postal Service that such a method is arbitrary and inconsistent with accepted costing principles.[36]  In 39 U.S.C. § 3622(c)(2), the legal standard is "reliably identified causal relationship," which provides that "the relationship between costs and products must be causal in nature and reliably identified".  Order No. 3506 at 14.  UPS has previously suggested and the Commission consistently rejected similar methods because they would produce outcomes "'tantamount to fully-allocated costing'" ignoring the PAEA requirement that costs must be "allocated to specific products or groups of products on a basis [of the] casual relationships."[37]  The Commission agrees with commenters that if the attribution of costs to products were done as UPS suggests, it would violate 39 U.S.C. §§ 3631(b) and 3633(a)(1) and (2).  Pitney Bowes Comments at 6; GCA Comments at 5.

E.      The Commission Does Not Find Appropriate Any Modification to the Incremental Cost Methodology at This Time

UPS argues that the "fundamental design of [the Postal Service's system of allocating costs] established…in the context of delivering letters…is insufficient to determine and properly attribute the incremental costs of delivering packages today."  Petition at 29.  UPS further asserts that "competitive products are a prominent focus of the Postal Service's business" because "packages play a very large role in the Postal Service's business operations" and "necessarily [do] impact its operations."  UPS

_____

[36] *See id.;* GCA Comments at 5; Pitney Bowes Comments at 5.

[37] *See* Pitney Bowes Comments at 5-6 (citing Order No. 4963 at 35-36; FY 2018 ACD at 121). *See also* ASI Comments at 5-6 (citing FY 2018 ACD at 121); GCA Comments at 5.

Motion at 2; UPS Reply Comments at 4.  UPS claims that the Postal Service's costing models assume its operations are fixed, and that they would not significantly change if the Postal Service stopped delivering packages.  UPS Comments at 5-8.  This claim is incorrect.  The Postal Service consistently modifies its costing system to meet operational realties and to address operational changes, including the increased role of competitive products.  The Postal Service states:

> The Postal Service acknowledges that the existence of a seasonal peak in volume can cause seasonal costs and agrees with UPS that package volumes are an important part of that peak.  The Postal Service has performed, and will continue to perform, appropriate costing exercises to ensure that package volumes bear the seasonal peak costs that they cause.  But those costing exercises should be grounded in both solid economic theory and actual operational practice.

Postal Service Comments at 2.

Beginning with Order No. 3506 (where the Commission redefined attributable costs of a product or service to mean incremental costs of that product or service),[38] there have been a number of modifications to the methodology of incremental costs calculations.  In Docket No. RM2016-13, the Commission adopted final rules consisting of necessary revisions to parts 3015 and 3060 of Title 39 of C.F.R., which resulted from changes approved in Order No. 3506.[39]  The main purpose of the provided revisions was to modify the definition or description of attributable costs of Competitive products to include not just volume-variable costs and product specific fixed costs, but also those inframarginal costs calculated as part of a Competitive product's incremental costs.  Order No. 3641 at 1-2, 13-14.  These changes also affected cost attribution under section 3633(a)(2), which requires that "each competitive product covers its costs attributable."

---

[38] Order No. 3506 at 3, 123-124.

[39] Docket No. RM2016-13, Order Adopting Final Rules on Changes Concerning Attributable Costing, December 1, 2016, at 1, 13-15 (Order No. 3641).

Orders Nos. 3506 and 3641 have expanded the category of attributable costs, now meaning incremental costs at the higher level of aggregation than just at a product level. This methodological change was implemented by the Postal Service in its FY 2017 Annual Compliance Report in Docket No. ACR2017.[40] In the FY 2017 ACD, the Commission directed that incremental costs should be calculated at the highest level of aggregation for which they can be estimated reliably. FY 2017 ACD at 9-10. As a result, incremental (*i.e.*, attributable) costs for each cost component are now calculated as the sum of following costs:

- the incremental costs of Competitive products collectively;

- the sum of the incremental costs of each Market Dominant mail class calculated at the class level;

- the incremental costs of Market Dominant Special Services;

- the incremental costs of free mail;

- the incremental costs of Market Dominant international mail; and

- group specific costs for international mail collectively.[41] The direct estimation of domestic and international Competitive products that the Commission presented in the FY 2017 ACD, replaced the hybrid method for estimating incremental costs for Competitive products previously approved in Order No. 399 (which used a proxy for international incremental costs).[42]

---

[40] *See* Docket No. ACR2017, United States Postal Service FY 2017 Annual Compliance Report, December 29, 2017; *see also* Docket No. ACR2017, *Annual Compliance Determination,* March 29, 2018, at 8 (FY 2017 ACD).

[41] *See* Summary Description, Costs by Segments and Components, FY 2020, and Narrative Explanation, Econometric Demand Equations for Market Dominant Products Filed on January 20, 2021, July 1, 2021, (FY 2020 Summary Description), ZIP file "Summary Description," file "PREF-20.docx," at i. (citing FY 2017 ACD at 10), available at *https://www.prc.gov/dockets/daily?filterdate%5Bvalue%5D%5Bdate%5D=7-1-2021.*

[42] FY ACD 2017 at 82. *See* Docket No. RM2010-4, Order Accepting Analytical Principles Used in Periodic Reporting (Proposals Twenty-Two through Twenty-Five), January 27, 2010, at 4-5 (Order No. 399). In Order No. 399, the Commission approved a hybrid incremental cost methodology, wherein the incremental costs are calculated for domestic Competitive products, but volume-variable costs and product specific costs are used for Competitive international mail as a proxy for incremental costs, due to the lack of disaggregated international data. FY 2017 ACD at 82 n.120 (referring *to* Order No. 399 at 4-5).

Following the Commission's FY 2017 ACD directive, the Postal Service filed a petition in Docket No. RM2018-6 to initiate a rulemaking proceeding for approval of a new methodology that enabled direct estimation for international incremental costs.[43] The Commission approved that new methodology in Order No. 4719 issued in Docket No. RM2018-6.[44] In that same docket, the Commission approved a new methodology for calculation of incremental costs for Negotiated Service Agreements (NSAs). Order No. 4719 at 1-2, 7-10. Because of these continued improvements in the calculation of incremental costs, the category of institutional costs has narrowed. The Commission will continue its efforts to analyze the Postal Service's incremental cost methodology to ensure it reflects operational changes, and will continue to approve modifications that improve the accuracy of the calculations. As discussed in Section VII.G., *infra*, the Commission strongly encourages the Postal Service to accelerate the studies of peak-season costs and to investigate the impact of package deliveries on its operations.

F.     UPS Has Not Demonstrated Misuse of the Constant Elasticity Assumption

UPS claims that "the Postal Service estimates incremental cost by using a constant elasticity model" that does not work for estimating "the incremental costs of package deliveries given the large volume of that business today." UPS Conference Slides at 33. According to UPS, the problem with the Postal Service's incremental cost model is that it "erroneously assumes that a 'constant elasticity' relationship holds for all volume levels." UPS Comments at 5.

UPS argues that the constant elasticity "assumption is appropriate only for products (or groups of products) that make up small proportions of overall volume" and cannot be applied to Competitive products, which "make up an ever increasing proportion of Postal Service volume and an even greater proportion of [Postal Service]

---

[43] Docket No. RM2018-6, Petition of the United States Postal Service for the Initiation of a Proceeding to Consider Proposed Changes in Analytical Principles (Proposal Three), June 1, 2018.

[44] Docket No. RM2018-6, Order on Analytical Principles Used in Periodic Reporting (Proposal Three), July 19, 2018, at 1-2, 6-7 (Order No. 4719).

costs." *Id.* at 8 (emphasis omitted). To support its argument, UPS cites previous work by Professor Bradley filed by the Postal Service in Docket No. RM2016-2 acknowledging problems with the constant elasticity assumption. *Id.* at 9 n.22. Also cited by UPS are Commission statements in Order No. 3506 critical of the constant elasticity assumption. *Id.* n.23 (citing Order No. 3506 at 8).

The Postal Service argues that in Order No. 3506, the Commission made clear that the constant elasticity assumption is appropriate for the incremental cost model (and, specifically for calculation of inframarginal costs), but that it was not appropriate for the approach proposed by UPS in Docket No. RM2016-2 because it "require[d] evaluating the cost curve at very low volume to zero volumes, an area in which the Postal Service [did] not operate." Postal Service Comments at 30-33 (citing Order No. 3506 at 38, 42).

Using detailed analysis and graphs, the Postal Service explains that its incremental cost model does not require evaluation at such low volume levels. *Id.* at 31-33. Specifically, the Postal Service clarifies that the incremental cost model "calculates the additional cost arising from adding that product, or group of products, to the existing vector of products [and] the calculation takes place *at current volume levels*, not at, or near, zero volume levels".[45] The Commission agrees with the Postal Service's interpretation of Order No. 3506 and concludes that application of the constant elasticity assumption to Competitive products is not precluded simply because their proportion of overall volume has increased.

In its reply comments, UPS argues further that "the incremental cost model is only reliable 'in a very small range of a component's cost curve where the constant elasticity assumption has been empirically verified based on observed volumes.'" UPS Reply Comments at 6 (citing Postal Service Comments at 30; Order No. 3506 at 42)

---

[45] *Id.* at 31 (emphasis added). The Postal Service also questions why UPS is so concerned about the constant elasticity assumption considering that, first, competitive volume covers "just four to five percent [of the Postal Service's] total volume," and second UPS previously, in its proposal in Docket No. RM2016-2, considered a constant elasticity approach to be "appropriate method to use when covering 100 percent of volume." *Id.* at 33.

(emphasis omitted).  UPS also cites Order No. 3506 for the proposition that "the constant elasticity assumption is 'unsupported when used for volume levels substantially outside the range of actual experience.'"  *Id.* at 6 (citing Order No. 3506 at 8).

These latter assertions raise a further and different issue, namely, whether variability estimates can be reliable when they are based upon product volumes that are significantly different from current volumes.  UPS's challenges to the variability analysis use a simplistic analysis that lacks support for its assumptions.  Applying the approach proposed by UPS would render it impossible to reliably identify causal relationships between products and costs as required by Title 39.  The Commission therefore concludes that the information in this record does not support a finding that the variability estimates are unreliable at current volume levels.[46]

In Order No. 6004, the Commission has provided interested persons the opportunity to "propose areas of research" that might warrant further inquiry and has requested public input regarding the possible initiation of proceedings to consider those areas.  *See* Order No. 6004 at 8-11.  Order No. 6004 identifies the issue raised by UPS regarding the reliability of the variabilities that are currently in effect, among other issues, as possible candidates for further research.  *Id.* at 5.  In the meantime, the Commission encourages the Postal Service to review and, where appropriate, update variability studies to ensure they accurately reflect the current volume structure and are estimated using data samples that either cover the peak season or are representative of the whole year.  *See* Section VII.G., *infra.*

G.   The Commission Strongly Encourages the Postal Service to Continue Studies of Peak-Season Costs

---

[46] UPS itself recognizes that additional information is needed to explore the issues raised by its Petition.  *See e.g.,* Petition at 37-38.

In its Petition, UPS raises a number of issues that are worthy of further consideration.  UPS argues that when "there is significant volume variation *within* quarters, and in particular within the fourth calendar quarter…, [t]he general lack of seasonal variability estimates is…problematic."[47]  The Postal Service acknowledges that the estimation of separate variabilities for peak-season costs and/or the development of distribution keys, when necessary, can be done by applying the established methodology, and it is the part of the multi-step "process to identify, study, and attribute seasonal costs."  Postal Service Conference Slides at 14, 24.  There is the potential for estimating volume variabilities separately for peak-season and regular season using the same variability model, but collecting separate seasonal data.  Bradley Report at 9-10; PR Comments at 14.  For example, the Commission has approved this approach for City Carrier Special Purpose Routes (SPR) in Docket No. RM2019-6.[48]

UPS seems to appreciate the Postal Service's efforts, but argues that "nothing in that docket [Docket No. RM2019-6] addressed an issue…that the line between letter routes and special purpose routes remains blurred."  Petition at 33-34.  UPS claims that:

> As a result, a body of costs of unknown but likely significant size
> that is driven in large part by parcels is assigned to city carrier
> letter routes [and a large portion of these costs] are subject to low
> and irrelevant variabilities (for "regular" delivery based on seven-
> year-old data) and are distributed to products using distribution
> keys for shapes that consist primarily of letter mail for the entire
> quarter.

*Id.* at 34.

UPS appears to directly relate this statement to its repeatedly expressed concern about the city carrier street time model, which was approved by the Commission in

---

[47] Petition at 28; UPS Comments at 12; UPS Motion at 2-3; UPS Reply Comments at 8-9.

[48] Postal Service Comments at 6-7.  *See* Docket No. RM2019-6, Order on Analytical Principles Used in Periodic Reporting (Proposal One), January 14, 2020, at 7-8 (Order No. 5405).

Docket No. RM2015-7.[49]  It argues that the model was run on the data from the "special study covering just 12 days in the spring of 2013 (for collection mail) and 13 days in the spring of 2014 (for packages and accountables)…[and] [t]hese brief time periods [were] not a representative sample of delivery days for the year."  Petition at 29 (emphasis omitted).

But, as UPS acknowledges, the Commission responded to these concerns by initiating a new Docket No. PI2017-1, to explore the opportunities to update the city carrier street time model and requested the Postal Service to generate year-round datasets that would allow for an exploration of modeling approaches including those that would capture many key elements of UPS's proposed solutions.[50]  With a series of status reports filed in response to Order No. 4869, the Postal Service provided the requested one-year of data.[51]  Order No. 6004, issued in Docket RM2022-1, provides an opportunity for interested persons to suggest further investigation of an update to the city carrier street time model.  *See* Order No. 6004 at 3-6.

UPS also criticizes the Postal Service for not including data on peak season (so called Christmas routes) for purchased highway transportation in the Transportation Cost System (TRACS) database, which prevents "the development of the quarterly distribution keys used to attribute volume variable transportation costs to products."  Petition at 35.  It is important to note that the variability required to calculate these volume-variable costs is a product of two variabilities: cost-to-capacity variability and capacity-to-volume variability.  Recently, in Docket No, RM2021-1, the Postal Service presented and the Commission approved with the modifications discussed in Order

---

[49] Docket No. RM2015-7, Order Approving Analytical Principles Used in Periodic Reporting (Proposal Thirteen), October 29, 2015, at 66 (Order No. 2792).

[50] *Id.* at 33.  *See* Docket No. PI2017-1, Interim Order, November 2, 2018, at 17 (Order No. 4869).

[51] *See* Docket No. PI2017-1, Second Status Report of the United States Postal Service in Response to Order No. 4869, July 31, 2019; Docket No. PI2017-1, Third Status Report of the United States Postal Service in Response to Order No. 4869, October 24, 2019; Docket No. PI2017-1, Fourth Status Report of the United States Postal Service in Response to Order No. 4869, January 22, 2020; Docket No. PI2017-1, Fifth Status Report of the United States Postal Service in Response to Order No. 4869, February 27, 2020.

No. 5999, the re-estimated cost-to-capacity variabilities for Christmas routes using data from the relevant set of Christmas accounts.[52]  In Order No. 5999, the Commission also emphasized the importance of the Postal Service conducting research on the appropriate distribution keys for peak-season costs.  Order No. 5999 at 36-38.

In response to the UPS criticism regarding the lack of data for Christmas routes in TRACS, which prevents both the re-estimation of capacity-to-volume peak-season variabilities and development of distribution keys for peak-season costs, the Postal Service explains that "in the past, there were too few of [Christmas] routes to support accurate statistical sampling."[53]  In Docket No. RM2016-12, the Commission found "that the TRACS database [was] not suitable" for estimating capacity-to-volume variabilities for Christmas routes and reaffirmed the existing "assumption regarding proportionality between capacity and volume."[54]  The Commission suggested "that the Postal Service perform further research (*e.g.,* in the form of a special study) that would allow updating variabilities for [Christmas] routes, if feasible."  Order No. 3973 at 40.  The Postal Service confirms that it "is currently investigating the feasibility of separately testing Christmas routes in TRACS."  Postal Service Comments at 40.  The Commission supports the UPS concern about the lack of TRACS data on Christmas routes, and considering that it has been more than 4 years since Order No. 3973 was issued, urges the Postal Service to expedite such testing.  In the recent Order No. 5999, "the Commission strongly encourage[d] the Postal Service to expedite its efforts to include data on Christmas routes into the TRACS sampling frame and perform the capacity-to-volume variability study."  Order No. 5999 at 36.  Order No. 6004 has created a forum

---

[52] Docket No. RM2021-1, Order on Analytical Principles Used in Periodic Reporting (Proposal Seven), October 6, 2021, at 2, 15, 23, 41 (Order No. 5999).  To estimate cost-to-capacity variabilities, the Postal Service traditionally relies on the data from the Transportation Contract Support System (TCSS). *Id.* at 4-5.

[53] Postal Service Comments at 37 (responding to UPS Petition at 35).

[54] Docket No. RM2016-12, Order on Analytical Principles Used in Periodic Reporting (Proposal Four), June 22, 2017, at 15, 19 (Order No. 3973).

for suggesting further proceedings to investigate separate sampling of data on Christmas routes in TRACS.  *See* Order No. 6004 at 6-7.

The Public Representative does not support the Petition, but characterizes the UPS proposed model as a "template" of peak-season changes that should help determine the appropriate "type of model changes."  PR Comments at ii, 14. Considering ongoing changes in the Postal Service's operational structure, the Commission concludes that additional studies of peak-season costs will be beneficial.  It is important to acknowledge that the Postal Service has continued to make progress in its efforts to better account for peak-season costs.  Thus, in the recent Order No. 5991 issued in Docket No. RM2021-7, the Commission approved a revised system for distributing the SPR delivery costs that would make it possible to "separate the weekday SPR cost pools and distribution factors into peak and non-peak pools."[55]

The majority of commenters also suggest that the Postal Service investigate whether a new or revised type of costing model will better capture seasonal effects and lead to an improved costing methodology.[56]  An appropriate new model might require a new set of data at the more granular level than it exists now.  PR Comments at 15-16. The Commission agrees with these comments.  The proceeding established by Order No. 6004 provides the opportunity for such investigation.

---

[55] Docket No. RM2021-7, Order on Analytical Principles Used in Periodic Reporting (Proposal Four), September 30, 2021, at 5, *see id.* at 15 (Order No. 5991).

[56] PR Comments at 15-16; PSA Comments at 3; Pitney Bowes Comments at 1, 6; ASI Comments at 3.

VIII.    ORDERING PARAGRAPH

*It is ordered*:

For the purposes of periodic reporting to the Commission, the changes to the Postal Service's costing methodologies proposed by UPS Proposal One, are hereby rejected.

By the Commission.


Erica A. Barker
Secretary

# EXHIBIT B

**Postal Regulatory Commission**
**Submitted 1/28/2022 1:45:33 PM**
**Filing ID: 120782**
**Accepted 1/28/2022**

ORDER NO. 6097

UNITED STATES OF AMERICA
POSTAL REGULATORY COMMISSION
WASHINGTON, DC 20268-0001

Before Commissioners:                          Michael Kubayanda, Chairman;
                                               Ann C. Fisher, Vice Chairman;
                                               Mark Acton;
                                               Ashley E. Poling; and
                                               Robert G. Taub

Periodic Reporting                                      Docket No. RM2020-9
(UPS Proposal One)

ORDER DENYING UNITED PARCEL SERVICE, INC.'S
MOTION FOR RECONSIDERATION OF ORDER NO. 6048

(Issued January 28, 2022)

I.      INTRODUCTION

On December 28, 2021, United Parcel Service, Inc. (UPS) filed a motion for
reconsideration of Commission Order No. 6048.[1]  The Postal Service opposes the
Motion.[2]  For the reasons discussed below, the Commission denies UPS's Motion.

---

[1] United Parcel Service, Inc.'s Motion for Reconsideration of Order No. 6048, December 28, 2021
(Motion).

[2] Opposition of the United States Postal Service to UPS Motion for Reconsideration of Order No.
6048, January 4, 2022 (Postal Service Response).

## II.    BACKGROUND

On May 29, 2020, UPS filed a petition pursuant to 39 C.F.R. § 3050.11 requesting the Commission to initiate a proceeding to change how the Postal Service determines incremental costs and how it accounts for peak-season costs in its periodic reports.[3]  UPS designated the proposed changes as UPS Proposal One.  *See* Petition. On July 13, 2020, the Commission issued Order No. 5586 initiating a proceeding and scheduling a video technical conference to consider UPS's Petition.[4]  Following the technical conference, the Commission provided an opportunity for interested persons to file written comments.[5]  On the basis of its review of UPS's Petition, information submitted by both UPS and the Postal Service, the video technical conference, and participants' comments, the Commission issued Order No. 6048 rejecting UPS's Petition.[6]

## III.    UPS'S MOTION AND THE POSTAL SERVICE'S RESPONSE IN OPPOSITION

UPS bases its request for reconsideration on alleged errors of both fact and law. Motion at 2-4.  In the alternative, it "requests that the Commission postpone its formal entry of Order No. 6048…until it issues an order in the appropriate share docket (Dkt. No. RM2022-2), and then reconsider Order No. 6048 in light of its decision in the appropriate share docket." *Id.* at 4.

The Postal Service opposes both the request for reconsideration of Order No. 6048 and the alternative request for postponement of the formal entry of Order No.

---

[3] Petition of United Parcel Service, Inc. for the Initiation of Proceedings to Make Changes to Postal Service Costing Methodologies, May 29, 2020 (Petition).  UPS also filed a library reference in support of its Petition.  *See* Notice of Filing of Library Reference UPS-LR-RM2020-9/1, May 29, 2020.

[4] Notice and Order Establishing Docket to Obtain Information Regarding Proposed Changes to Cost Methodologies and Scheduling Technical Conference, July 13, 2020 (Order No. 5586).

[5] Notice and Order Establishing Comment Deadline, October 27, 2020 (Order No. 5738).

[6] Order Rejecting United Parcel Service, Inc.'s Proposed Changes to Postal Service Costing Methodologies (UPS Proposal One), November 29, 2021 (Order No. 6048).

6048 pending the outcome of the appropriate share docket.  Postal Service Response
at 1-2.

IV.    COMMISSION ANALYSIS

A.    Request for Reconsideration of Order No. 6048

None of the three grounds asserted by UPS warrant reconsideration of Order No.
6048.  As its first ground, UPS argues that in Order No. 6048 the Commission "erred as
a matter of law in relying on a vacated order and on reasoning that the D.C. Circuit has
rejected…."  Motion at 3.  The "vacated order" that UPS refers to is Order No. 4963,
which was the subject of judicial review in *United Parcel Serv., Inc. v. Postal Regul.
Comm'n,* 955 F.3d 1038 (D.C. Cir. 2020) (*UPS v. PRC*).[7]

Contrary to UPS's assertion, however, the United States Court of Appeals for the
District of Columbia Circuit in *UPS v. PRC* did not vacate Order No. 4963.  Instead, it
remanded the case to the Commission "for further proceedings, in accordance with the
[court's] opinion…."[8]  By remanding the case for further proceedings, the court left open
the possibility that the Commission could, on remand, provide legally sufficient grounds
for the conclusions it had reached in Order No. 4963.[9]  On remand, the Commission
addressed the court's concerns and questions about conclusions that the Commission

---

[7] *See* Docket No. RM2017-1, Order Adopting Final Rules Related to the Institutional Cost
Contribution Requirement for Competitive Products, January 3, 2019 (Order No. 4963).

[8] *UPS v. PRC,* No. 19-1026, ECF Document No. 1837951, April 14, 2020, at 1.

[9] *See UPS v. PRC*, 955 F.3d at 1051 ("On remand, the Commission might decide to revise its
judgment regarding the 'appropriate share' under § 3633(a)(3).  …  It is also possible, however, that the
Commission might decide against revising its bottom-line judgment, given the other factors the
Commission must consider under § 3633(b) and the latitude that the text affords the Commission in
making a final determination.").  The court concluded by noting that "[i]t is not for this court to say that the
Commission must account for costs in any specific way under § 3633(b) or that the Commission must
make any particular 'appropriate share' determination under § 3633(a)(3)."  *Id.*

had reached in Order No. 4963 and provided an opportunity for interested persons to comment on the Commission's supplemental analysis.[10]

Given the Commission's authority on remand to "decide against revising its bottom-line judgment," the court's remand without vacatur of Order No. 4963 for further Commission proceedings did not cause any references to the contents of Order No. 4963 to be legal error requiring reconsideration of Order No. 6048. *UPS v. PRC*, 955 F.3d at 1051. Moreover, UPS's references to Order No. 4963 do not disturb Order No. 6048's conclusion that UPS Proposal One failed to meet the legal requirements for changing the methodology for attributing peak-season costs, which appear in 39 U.S.C. § 3652(e)(2)(A), (C) and 39 C.F.R. § 3050.11(a). *See* Order No. 6048 12-13.

As its second ground for reconsideration, UPS asserts that the Commission did not adequately consider its argument that incremental costs of the Postal Service's competitive product business "should be calculated by determining *all* 'costs that could be eliminated if the Postal Service stopped delivering packages.'"[11] Contrary to UPS's claim, the Commission presented a specific and extensive discussion of UPS's allegations. *See* Order No. 6048 at 17-19. In its Motion, UPS fails to identify specifically what aspect of its claim the Commission "failed adequately to consider" and offers no facts or arguments not previously considered by the Commission. *See* Motion at 3.

As its third ground for reconsideration, UPS argues that the Commission "erred in accepting the Postal Service's claims that the annual December peak-season cost spike is an 'institutional cost,' and that the existing cost methodology reflects the effects of seasonal trends that influence peak-season package delivery." *See id.* at 3-4 (footnote omitted). Once again, however, UPS fails to identify the nature or source of the alleged

---

[10] *See* Docket Nos. RM2017-1 and RM2022-2, Supplemental Notice of Proposed Rulemaking and Order Initiating the Third Review of the Institutional Cost Contribution Requirement for Competitive Products, November 18, 2021, at 6-7, 40-71 (Order No. 6043).

[11] Motion at 3 (quoting Petition at 3) (emphasis in the original).

error in the Commission's discussion of UPS's claim in Order No. 6048 and offers no facts or arguments not previously considered by the Commission. *See id.*

Finally, UPS claims that the Commission "disregarded UPS's argument showing that the peak-season cost spike has a reliably identified causal relationship with and/or is uniquely or disproportionately associated with competitive products." *Id.* at 4. Contrary to UPS's assertions, the Commission did not "disregard" UPS's argument—it discussed and rejected the argument. Order No. 6048 at 17-18. Once again, UPS's Motion merely restates UPS's earlier contentions and offers no new facts or arguments warranting reconsideration.

### B. Alternative Request for Postponement and Reconsideration

In the alternative, UPS asks the Commission to "postpone its formal entry of Order No. 6048…until it issues an order in the appropriate share docket (Dkt. No. RM2022-2), and then [to] reconsider Order No. 6048 in light of its decision in the appropriate share docket." Motion at 4. None of the arguments presented by UPS provide adequate support for its request.

Order No. 6048 was issued and posted on the Commission's website on November 29, 2021. Under the Commission's rules of practice, Order No. 6048 was effective on that date. *See* 39 C.F.R. § 3010.101(d). The Commission's rules of practice do not provide for a party to request a "postponement of formal entry" or for "a delay in the final issuance" of Commission orders that have already been issued, posted, and taken effect. *See* 39 C.F.R. part 3010.

Even if a postponement or delay of the "formal entry" or "final issuance" of Order No. 6048 was permitted, UPS has failed to demonstrate that such action is appropriate or warranted. Order No. 6048 addressed a specific UPS proposal "to change how the United States Postal Service determines incremental costs, and in particular how it accounts for peak-season costs, in its periodic reports." Petition at 1. By contrast, the proceedings in Docket No. RM2022-2 deal with a different question—the question of what the appropriate share of institutional costs contributed by competitive products

should be.  *See* Order No. 6043 at 1-2, 130; *see also* Postal Service Response at 2.
Accordingly, the Commission agrees with the Postal Service that "[t]he alleged overlap
between the two dockets is premised on a fundamental misconception of the nature of
the scope of the two proceedings" and the exercises in the two proceedings are
"conceptually distinct."  *See* Postal Service Response at 2.

Assuming *arguendo* UPS were correct that comments in the appropriate share
proceeding in Docket No. RM2022-2 "will bear on the merits of UPS Proposal One,"[12]
UPS incorrectly asserts that the issuance of Order No. 6048 "would prematurely tie the
Commission's own hands to devise a cost attribution methodology for peak-season
costs that takes into account all relevant facts and arguments and comports with 39
U.S.C. § 3633(a)."  *Id.*  In addressing the appropriate share issue in Docket No.
RM2022-2, UPS is free to advocate positions that it believes to be consistent with UPS
Proposal One.  If the outcome of the appropriate share proceeding supports UPS
Proposal One, UPS can use conclusions reached in Docket No. RM2022-2 to file a new
petition for approval of UPS Proposal One or a revised version of UPS Proposal One.

Similarly, UPS will have an opportunity to pursue the peak-season cost-
attribution issues in Docket No. RM2022-1.[13]  In Order No. 6048, the Commission
expressly directed the Postal Service "to accelerate studies on peak-season costs" and
noted that it had recently established a proceeding in Docket No. RM2022-1 to consider
possible improvements to the quality, accuracy, and completeness of Postal Service
data.  Order No. 6048 at 2.

Finally, UPS erroneously asserts that "a postponed final decision in the present
seasonality docket [*i.e.*, Order No. 6048] will be advantageous to all parties for any
appeal."  *See* Motion at 5.  According to UPS, the alleged benefits would be the
avoidance of duplicative analysis, piecemeal litigation that causes judicial inefficiency,

---

[12] Motion at 5.

[13] Docket No. RM2022-1, Notice and Order of Proposed Rulemaking on Periodic Reporting,
October 8, 2021 (Order No. 6004).

and the risk of inconsistent rulings that might complicate the Commission's determination of an appropriate share in Docket No. RM2022-2.  *Id.*

The fundamental problem with this argument is that resolution of Docket No. RM2022-2, which concerns the method to calculate the appropriate share of institutional costs, does not directly impact the resolution of UPS Proposal One, which concerns UPS's proposed changes to the calculation of incremental costs.  Thus, postponing resolution of UPS Proposal One until the conclusion of potential litigation concerning the Commission's appropriate share proceeding in Docket No. RM2022-2 does not appreciably increase judicial economy and instead would be an unnecessary delay and would inappropriately entangle distinct concepts.

C.    Conclusion

For the reasons set forth above, UPS's Motion raises no cognizable issues of law or new issues of fact that warrant the relief requested.

V.    ORDERING PARAGRAPH

*It is ordered*:

United Parcel Service, Inc.'s Motion for Reconsideration of Order No. 6048, filed December 28, 2021, is hereby denied.

By the Commission.

Erica A. Barker
Secretary